MORRISSY, Respondent, vs. THE COOLIDGE FUEL & SUPPLY COMPANY, imp., Appellant.

*September 7 — October 2, 1894.*

*Contracts: Contradictory pleadings: Evidence: Husband and wife.*

Plaintiff commenced an action against her husband for services as cook in a lumber camp, and in the complaint, and also in the affidavit for attachment and the verified claim for a lien on railroad ties cut by the men for whom she cooked, stated that she did the work for her husband and that he promised to pay her therefor. She also testified to the same effect on the trial. On an appeal to the circuit court the complaint was amended so as to allege that she did the work for the owner of the ties, a corporation with which the husband had a contract to get out such ties. The amended complaint also alleged that all the statements in the claim for a lien were true. Upon the trial in the circuit court the testimony of the plaintiff and her husband showed that she was to be paid out of the money coming to him on his contract. *Held,* that a verdict finding that the plaintiff did the work as an employee of the corporation and under a contract with it was not supported by the evidence.

APPEAL from the Circuit Court for *Chippewa* County. The facts are stated in the opinion.

For the appellant there was a brief by *Jenkins & Jenkins,* and oral argument by *John J. Jenkins.*

For the respondent there was a brief by *W. H. Stafford* and *Vesper Morgan,* attorneys, and *C. W. Gilman,* of counsel, and oral argument by *Mr. Stafford* and *Mr. Morgan.*

ORTON, C. J.    This action was tried on an amended complaint construed to mean that the plaintiff worked as a cook for the defendant company in its lumber camp, in Chippewa county, in boarding the men who were getting out ties for the defendant, on and between the 7th day of September, 1891, and the 9th day of April, 1892, both days inclusive, for $60 per month, continuously while the men

were getting out the ties for the defendant, amounting in all to the sum of $450.75. The plaintiff also claims in the amended complaint that she performed said labor and service in good faith for said defendant, and that the defendant company promised to pay her therefor. The plaintiff asks for a personal judgment against the defendant company, and a lien upon the 20,000 railroad ties of the defendant which were cut and made by the men for whom she worked as cook in camp during that time.

The court submitted to the jury the following question: "Was the work mentioned in the complaint performed by plaintiff for the *Coolidge Fuel & Supply Company*, as its employee, under a contract between her and said company?" The jury answered "Yes," and thereupon the court rendered a personal judgment against the company for $450 and costs, and this appeal is taken therefrom.

We think this judgment should be reversed on the merits of the case. The evidence seems to be clearly against the special verdict that finds the work performed by the plaintiff was for the defendant company, as its employee, under a contract with the company.

1. The pleadings and history of the case are strong evidence against this finding. The action was first brought by the plaintiff, in the municipal court of Chippewa county, against Frank M. Morrissy, her husband, alone, and the present defendant was not known in the case as the owner of the ties on which she claimed a lien. (1) Her affidavit for an attachment of the ties states that the defendant Frank M. Morrissy is personally liable to the plaintiff for the demand, and is indebted to her therefor; that she did the work at his special instance and request; and that he agreed to pay her what her services were reasonably worth. (2) The plaintiff's claim for a lien on the ties is for labor and services as a cook in camp, for and at the special instance and request of Frank M. Morrissy, and for which he

promised and agreed to pay her what it was reasonably worth, and she asked a lien on the ties therefor. The claim states also that the sum of $475.50 for such work and labor is due the plaintiff from the said Frank M. Morrissy, over and above all legal setoffs. This claim was sworn to by the plaintiff the 13th day of April, 1892. (3) The plaintiff stated in her original complaint that the work was done at the special instance and request of her husband, the said Frank M. Morrissy, for which he promised to pay the plaintiff what it was reasonably worth. After this action was commenced, the defendant the *Coolidge Fuel & Supply Company* made application to be made a party thereto, as the owner of the railroad ties attached for the lien, which was granted; and said defendant answered said complaint, setting up that the plaintiff and the defendant Frank M. Morrissy were husband and wife, and that if the plaintiff performed any work or labor, and earned anything therefor, the same accrued from labor performed for said defendant Frank M. Morrissy and in his employ, and payable by him, and for which she could not recover. In said municipal court, judgment was rendered against the plaintiff, and she appealed therefrom to the circuit court for Chippewa county. (4) In said circuit court the plaintiff obtained leave to amend her complaint, and it was so amended that it stood against the said defendant company alone, and alleged that the work, labor, and services were performed for said defendants, and for which they promised to pay the plaintiff, at the special instance and request of the defendant Frank M. Morrissy, and the plaintiff demands judgment for $450 therefor against the defendant company. It is stated also in said amended complaint that the plaintiff filed the above claim, and that " *all the statements and allegations contained in said claim are true.*" This amended pleading is not verified, but the above claim was sworn to by the plaintiff. That claim alleges that the

plaintiff's services as cook in camp were rendered for the said Frank M. Morrissy and at his special instance and request, and that he promised and agreed to pay her therefor. This amended complaint therefore involves a direct contradiction. If all the statements and allegations in that claim are *true*, as is alleged, the other statement that such services were rendered for the defendant company cannot be true. The plaintiff's affidavit and claim under oath, upon which this action is predicated, have not been amended, and the truth of which has been thus reasserted, ought to stand as the true grounds of the action.

This action is brought to obtain a personal judgment against Frank M. Morrissy for the plaintiff's services, rendered for him and at his special instance and request, and for which he agreed to pay, and further for a lien on the railroad ties of the defendant company, and it has not been changed by any amendment. To repeat, the plaintiff reasserts the truth of all the statements and allegations in her verified claim in this pretended amendment of the complaint, and for her sake, as well as for correct practice, these original pleadings stand as the pleadings in the action.

2. But this is not all. The plaintiff's testimony supports her affidavit, claim, and pleadings. On the trial of the action before the municipal court the plaintiff testified, as a witness, that " she was employed by her husband, Morrissy, to perform these services, and that she worked for him." This is testified to by the judge of the municipal court before whom the action was tried. The testimony tended to show that the defendant company employed Frank M. Morrissy to get out a lot of railroad ties, and was to pay him 16 or 16½ cents apiece. Morrissy was embarrassed, and could not get trusted for the necessary supplies or for the labor of others; and it was agreed that the company should furnish the supplies and pay the laborers, and

that the same should be reimbursed out of the money that was to be paid for getting out the ties, and if anything was left after paying these charges it should go to Morrissy. This contract was verbal, and made about the 1st of September, 1891. There is no dispute about this contract. When the work was ended there was nothing coming to Morrissy. He had been paid up in full. Both the plaintiff and her husband testified on the last trial, in a rather uncertain way, that the company employed the plaintiff as cook in the Morrissy camp, and promised to pay her. But they both testified on cross-examination that her services, as well as all the other labor, "was to come out of the ties;" meaning, of course, out of the money coming to Morrissy for getting out the ties. This destroyed the effect of their previous testimony. The testimony on behalf of the company was very positive and explicit that the company never employed plaintiff or agreed to pay her. The persons who were present at the time and place when and where the plaintiff testified Coolidge promised, for the company, to pay her for her services, testified that no such thing occurred, but, on the other hand, that the plaintiff said that she did not want them to pay her and did not expect it, but that she was working for what they could make out of the tie contract, so as to pay up their debts. I do not state the testimony literally, but its legal effect. It would have been most unreasonable for the company to employ the plaintiff, and agree to pay her $450 for her services as cook in her husband's camp, over and above $16\frac{1}{2}$ cents per tie on her husband's contract, for this would have been a mere gratuity. Their testimony that her services were to be paid for out of the ties or the money for the ties, if there was anything coming to her husband on the tie contract, was reasonable, whether true or not. The plaintiff attempted to testify directly contrary to her testimony in the municipal court, but failed, fortunately, on cross-examination, when she testified that her labor had to

come out of the ties. The plaintiff should not have been allowed to testify in contradiction of her affidavit, her verified claim, her original complaint in the action, and of her testimony before the municipal court, and it does not appear that she did so. There was really no testimony to support the special verdict of the jury or the judgment.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.